**24-1198**

# United States Court of Appeals for the Federal Circuit

ALBERT NELSON LOBO,
Petitioner

**V.**

DEPARTMENT OF JUSTICE,
Respondent

Appeal from Denial of Public Safety Officers Benefits
by the U.S. Department of Justice, Office of Justice Programs,
Bureau of Justice Assistance in 2015-DIS-039,
by Director of the Bureau of Justice Assistance, Karhlton F. Moore

**CORRECTED BRIEF OF PETITIONER,**
**ALBERT NELSON LOBO**

Brian W Collins,

Law Offices of Brian W. Collins, APC,
7745 Boulder Ave, Unit 37,
Highland CA 92346,
(909) 649-6490
bcollins@bwcollinslaw.com

*Counsel for Petitioner*

March 29, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-1198
**Short Case Caption** Albert Lobo v DOJ
**Filing Party/Entity** Petitioner

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/29/2024 Signature: /s./Brian Collins

Name: Brian William Collins

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Albert Nelson Lobo | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**Albert Nelson Lobo v Department of Justice**
**PSOB Claim number 2015-DIS-039**
**Case Number 24-1198**

**Table of Contents** **Page**


| | |
|---|---|
| CERTIFICATE OF INTEREST FORM 9 | i |
| TABLE OF CONTENTS | 1 |
| TABLE OF AUTHORITIES | 3 |
| STATEMENT OF RELATED CASE PURSUANT TO RULE 47.5, LOCAL RULES OF THE COURT OF APPEALS FOR THE FEDERAL CIRCUIT | 4 |
| JURISDICTIONAL STATEMENT | 4 |
| I. STATEMENT OF THE ISSUES PRESENTED FOR REVIEW | 5 |
| II. STATEMENT OF THE CASE | 6 |
| III. SUMMARY OF THE ARGUMENT | 8 |
| III. STANDARD OF REVIEW | 10 |
| IV. ARGUMENT | 11 |
| A. Substantial Evidence Supports Payment of PSOB Benefits Not Denial | 11 |
| B. There has Not Been Substantial Compliance with Statute or Regulation by Respondents | 11 |
| C. The DOJ/BJA Did Not Give Substantial Weight or Adopt Factual Findings Submitted by Sheriff McMahon | 13 |

D. Substantial Medical Evidence Supports the Award Of PSOB Benefits 17

1. Mark Hyman M.D., Agreed Medical Examiner' Opinion is Substantial Evidence because he Analyzed the Entire Record 17

2. The "Preliminary Opinion" of William J. Oetgen M.D. Does not Constitute Substantial Evidence 18

3. James H. Diaz M.D. Opinion is Inconclusive and Does Not Constitute Substantial Evidence 20

CONCLUSION AND RELIEF SOUGHT 23

CERTIFICATE OF COMPLIANCE WITH FRAP32(A) 26

CERTIFICATE OF SERVICE 27

ADDENDUM AND EXHIBITS 28

# **Table of Authorities**

Cases **Page(s)**


*Amber-Messick v United States*, 483 F.3d 1316, 1321 (Fed Cir. 2007) 8

*Barnhart v. Sigmon Coal Co*., 534U.S.438, 450 (2002) 11

*Bell v. United States,* 22-1875T (Fed. Cl., Jan 25, 2024) 11

*Chevron U.S.A., Inc., v. Natural Resources Defense Council, Inc*., 15

467 U.S. 837, 842-843; 104 S. Ct. 2778, (1984)

*Malin v Department of Justice*, 2015-8001, (Fed. Cir. Aug 06, 2015) 21

*U.S. v. Aikins,* 946 F.2d 608, 614 (9th Cir. 1990) 14

*United States v O'Hagan*, 521 U.S.642, 673(1997) 15


**Statutes**


28 U.S.C. §149l(a) 2

34 U.S.C. §1028l(b) 3,6

34 U.S.C. §10285 (b)(2) 10,12,13,14

34 U.S.C. §10285 (b)(3) 10,12,13,14

34 U.S.C. §10287 1

California Labor Code § 3212 5

Code of Virginia §54.1-2902 18


**Regulations**


28C.F.R.§32.3 21

28 C.F.R.§32.5(b) 12,14

## STATEMENT OF RELATED CASES PURSUANT TO RULE 47.5, LOCAL RULES OF THE COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Petitioner Alfred Nelson Lobo, pursuant to Federal Circuit Rule 47.5, states that to the best of his knowledge, no other appeal in or from the same proceeding from the lower body was previously before this or any other appellate court.

## JURISDICTIONAL STATEMENT

The United States Court of Appeals for the Federal District is the proper court to hear an appeal from a final Director Determination of Denial of Public Safety Officers' Benefits (PSOB), from the Bureau of Justice Assistance, U.S. Department of Justice, (34 U.S.C.§ 10287). All administrative remedies have been exhausted.

The August 18, 2023 Director Determination, Denial, (Appx26), is a final determination from the PSOB, Bureau of Justice Assistance, United States Department of Justice, which denied PSOB benefits to Claimant. Appeal of the final determination within 90 days after service of the determination, or until November 22, 2023, was timely filed November 20, 2023, and is to be appealed to the United States Court of Appeals for the Federal Circuit, (28 U.S.C.§1491(a)).

# I. STATEMENT OF THE ISSUES

Public Safety Officers' Benefits (PSOB) disability and education benefits are to be awarded to public safety officers who have become permanently and totally disabled as the direct and proximate result of a personal injury sustained in the line of duty, (34U.S.C.§10281(b)). These benefits have been arbitrarily, capriciously, wrongfully, withheld and denied by the PSOB, Bureau of Justice Assistance, United States Department of Justice, contrary to statute and facts.

"The evidence in the record here show that, on April 24, 2010, the Claimant was admitted to the hospital with pneumonia and sepsis, which ultimately led to severe complications including myocardial infarctions and amputations of four limbs. In light of these facts, ***I find that the Claimant sustained an injury within the meaning of the PSOB Act and implementing regulations***", (emphasis added), (Appx10).

The PSOB benefits should have been paid based on this finding, admission, statement, and not denied.

Other evidence also supports the award of PSOB Benefits. The evidence includes the Agreed Medical Examinations and reports by Mark Hyman M.D. (Appx294-295; Appx371-381), the California Workers Compensation Appeals Board award of 100% Permanent Total Disability (Appx74-83), the certifications of fact by elected Sheriff John McMahon of San Bernardino County (Appx44; Appx84; Appx85;Appx86), the findings of industrial disability retirement by San

Bernardino County Employee Retirement Association (Appx73;Appx136; Appx570).

## II. STATEMENT OF THE CASE

Albert N. Lobo, was employed by the County of San Bernardino Sheriff's Office, San Bernardino County, California, as a Sheriff rank of Corporal with sworn officer status from 01/18/1997 to last day worked 04/24/2010, at which time he was hospitalized. Multiple diagnosis were rendered including pneumonia, sepsis, stroke, coma, cardiopulmonary arrests, Disseminated Intravascular Coagulation (DIC) resulting directly and proximately in amputation of both legs below the knees, amputation of the left arm at the elbow, amputation of all five fingers on the right hand.

Mr. Lobo is permanently and totally disabled as a result of these industrial injuries. He cannot feed himself, cannot perform basic hygiene, cannot dress himself, he cannot perform basic transfers, not without assistance. He cannot do any work.

Worker's Compensation benefits were originally disputed. The parties in the workers compensation claim jointly sought the expert medical opinion of Agreed Medical Examiner, Mark Hyman M.D.

Dr. Hyman, May 2, 2011 record review, reviewed 46.5" of medical records, 9344 pages of medical records, (Appx390).

Dr. Hyman, May 2, 2011 medical report (Appx371-381), after physically evaluating Mr. Lobo, after reviewing the entire record, and testing, concluded by written report that Al Lobo developed a severe form of pneumonia with sepsis, and Disseminated Intravascular Coagulation (DIC), resulting in blood clots in all extremities, resulting in the multiple appendages having to be amputated. Dr. Hyman noted the presumption of compensability in California for injuries to sworn officers due to heart trouble or pneumonia (California Labor Code §3212). He also noted Al Lobo was employed as a Sheriff/Corporal working supervisor in the Victor Valley Jail, and that the inmate population is well known to harbor multiple bacteria, concluding pneumonia is an infection of the lungs, acquired through direct contact with infected individuals at work resulting in these injuries. "This unfortunate series of circumstances is a direct result of his industrial related pneumonia", (Appx379).

The Agreed Medical Examiner, Mark Hyman MD, March 28, 2017, (Appx294-295), medical report, restated his opinion of industrial causation of pneumonia resulting in the injuries sustained by Claimant.

The California Workers Compensation Appeals Board awarded 100% Permanent Total Disability due to these industrial injuries, (Appx74-83).

San Bernardino County Public Employee Retirement Association (SBCERA), 04/05/2013, (Appx73), awarded Service-Connected Disability

Retirement, retroactive to 1/12/2013. SBCERA, September 10, 2015, submitted an Affidavit to the PSOB documenting the Service Connected Disability Retirement benefit effective 1/12/2013, equal to 50% of his highest final average compensation, (Appx136).

The elected Sheriff of San Bernardino County, John McMahon Sheriff-Coroner certified the record stating the work related permanent total disability of Al Lobo. He submitted to the PSOB the Report of Public Safety Officers' Permanent and Total Disability, form 3650/7, March 9, 2015, (Appx44-45).The elected Sheriff submitted additional letters to the PSOB, also certifying the record stating the permanent total disability was industrially related, (Appx84;Appx85;Appx86). However, the PSOB denied disability and educational benefits when they denied the claim.

## III. SUMMARY OF THE ARGUMENTS

The BJA acted without and in excess of its powers when it arbitrarily and capriciously denied PSOB benefits for permanent total disability incurred in the course and scope of employment as a sworn police officer to Albert Lobo and educational benefits to his children.

Congress obligated the BJA to give substantial weight to the evidence and all findings of fact, (WCAB Award 100% permanent total disability/SBCERA

Industrial Disability Retirement), complied and presented to the PSOB by the local Sheriff regarding eligibility for PSOB disability benefits.

Congress further compelled the BJA to adopt the factual findings because the local Sheriff gave a "Certification of Facts" regarding Lobo's eligibility for PSOB disability benefits.

Instead, of giving substantial weight to the evidence or adopting factual findings presented through the Sheriff to the PSOB, respondent's PSOB determining officer simply rejected all of this information, solely "…at his discretion".

The intent of Congress was clear and should have been followed, but was not.

Further, the BJA relied on incomplete reports which do not constitute substantial evidence. The first report, 1.5 pages, labeled three times "Preliminary Opinion", from MedTrans LLC, Phyllis Oetgen, JD, MSW, located in Virginia. The report does not identify one exhibit used to assist in forming the "Preliminary Opinion" letter, and there is no known final report. It is stamped by William Oetgen, M.D., who is not licensed to practice medicine in Virginia, thus it is not a medical report. But the PSOB denied the claim of Petitioner based on this letter.

The BJA hired another doctor whose opinion is at best inconclusive, not substantial evidence. Respondent asked the doctor about the cause of the injury, to which he wrote, "Cannot respond…". He did not say it was not work related.

The BJA Appendix to Director Determination (Appx10) found Petitioner sustained an injury within the meaning of the PSOB act and regulations. But nothing has been paid.

However, despite Congressional acts, the evidence of injury and disability, the Certifications of Fact, the agreed medical examination and opinion of Dr. Hyman, as compared to the inconclusive medical opinions obtained by Respondent which do not constitute substantial evidence, the claim of Petition has been arbitrarily and capriciously denied.

## IV. STANDARD OF REVIEW

The review of the Denial of Benefits under the PSOB Act by the Bureau of Justice Assistance, Office of Justice Programs, U.S. Department of Justice is limited to three inquiries:

"(1) whether there has been substantial compliance with statutory requirements and provision implementing regulations; (2) whether there has been any arbitrary or capricious action on the part of the government officials involved; and (3) whether substantial evidence supports the decision denying the claim", *Amber-Messick v.United States*, 483 F.3d 1316, 1321 (Fed Cir 2007).

## V. ARGUMENTS

### A. SUBSTANTIAL EVIDENCE SUPPORTS PAYMENT OF PSOB BENEFITS, NOT DENIAL

The Director Decision and Appendix to Director Decision clearly states:

"The evidence in the record here show that, on April 24, 2010, the Claimant was admitted to the hospital with pneumonia and sepsis, which ultimately led to severe complications including myocardial infarctions and amputations of four limbs. In light of these facts***, I find that the Claimant sustained an injury within the meaning of the PSOB Act and implementing regulations***",(emphasis added). (Appx10).

However, payment has not been made or delivered to Claimant. This denial of PSOB Benefits appears arbitrary, capricious, and wrongful. There is no reasonable basis for non-payment.

### B. THERE HAS NOT BEEN SUBSTANTIAL COMPLIANCE WITH STATUTE OR REGULATION BY DEFENDANT

The BJA Appendix to Director Determination, (Appx13), denies the disability was "certified" by elected Sheriff John McMahon, and refused to give substantial weight to the evidence, or to adopt factual findings, as required by law. The BJA then arbitrarily denied the claim.

34U.S.C.§10285 (b)(2), "In making a determination under section 1201, the Bureau shall give substantial weight to the evidence and all findings of fact presented by a State, local, or Federal administrative or investigative agency regarding eligibility for death or disability benefits".(Pub.L.115-36§2, June 2, 2017,131Stat.849).

34 U.S.C.§10285(b)(3), ”If the head of a State, local, or Federal administrative or investigative agency, in consultation with the principal legal officer of the agency, provides a certification of facts regarding eligibility for death or disability benefits, the Bureau shall adopt the factual findings,(emphasis added) if the factual findings are supported by substantial evidence”.(Pub.L.115-36§2, June 2, 2017,131Stat.849).

When signing these Acts into law on June 2, 2017, the President stated, “This bill speeds up approval times by giving State and local enforcement greater role in determining eligibility…”, U.S. Government Information, GPO, “Remarks on Signing the Public Safety Officers’ Benefits Improvement Act of 2017 and the American Law Enforcement Heroes Act of 2017", https://www.govinfo.gov/content/pkg/DCPD-201700538/pdf/DCPD-201700538.pdf

Congress clearly stated the intent of the law. The President endorsed the intent of Congress.

“In a statutory interpretation analysis, the first step ‘is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case’”, *Barnhart v. Sigmon Coal Co*, 534U.S.438, 450 (2002), cited in *Bell v. United States*, 22-1875T, (Fed. Cl., Jan 25, 2024).

The plain meaning of the two statutes was (1) to have the Bureau give substantial weight to all findings of fact presented by State, local or Federal administrative or investigative agency regarding eligibility for death or disability benefits, and (2) If the head of a State, local, or Federal administrative or investigative agency, in consultation with the principal legal officer of the agency, provides a certification of facts regarding eligibility for death or disability benefits, the *Bureau shall adopt the factual findings*,(emphasis added) if the factual findings are supported by substantial evidence.

Unfortunately, the DOJ/PSOB did not give substantial weight to the evidence, and did not adopt the factual findings, contrary to the statutes.

The Regulation created by the DOJ/Office of Justice Programs states the determining official may consider but is not bound by the factual findings nor obligated to adopt factual findings, but may do so entirely, "…at his discretion."

28 C.F.R.§ 32.5(b), "Except as otherwise may be expressly provided in the Act or this part, the PSOB determining official may, at his discretion, consider (but shall not be bound by) the factual findings of a public agency (or public safety agency)".(83FR22383, May 15, 2018).

The denial of PSOB benefits is contrary to the Congressional statutory intent, resulting in an arbitrary, capricious, wrongful denial of benefits.

### C. The DOJ/BJA Did Not Give Substantial Weight or Adopt Factual Findings Submitted by Sheriff McMahon

The elected Sheriff John Mc Mahon of San Bernardino County gave four Certifications of Fact, regarding Sheriff Al Lobo, certifying eligibility for the PSOB Benefits, (Appx44-45;Appx84;Appx85; Appx86;), consistent with the law (34U.S.C.§10285 (b)(2); 34U.S.C.§10285 (b)(3)). All certifications were mailed to the PSOB, signed by the head of the agency Sheriff McMahon, true and accurate, with additional evidence attached.

03/09/2015 Sheriff McMahon signed and mailed, "Report of Public Safety Officer's Permanent and Total Disability", U.S.D.O.J. Bureau of Justice Programs, PSOB form OJP Admin form 3650/7, (Appx44-45), along with the

SBCERA industrial disability retirement application with attachments (Appx48-63), and the 100% Permanent Total Disability workers compensation award of Claimant from the California WCAB (Appx74-83).

6/02/2015, elected Sheriff John McMahon signed and mailed the PSOB, BJA, USDOJ a “Statement Regarding Investigative Reports”, (Appx85), and a separate “Statement of Circumstances of Injuries”, (Appx84), and included copies of documents supporting the 100% industrial permanent total disability.

Then Sheriff McMahon signed and sent a fourth letter to the PSOB, BJA, USDOJ, “Statement Regarding Official Toxicology Reports or Analysis”, (Appx86) which was required by the PSOB, with attachments to support the 100% permanent total disability including the Employers Report of Occupational Injury or Illness dated 4/25/2010, medical reports by Agreed Medical Examiner, Mark Hyman M.D 5/02/2011(Appx371-381), and other reports 11/14/2012, 11/15/2012 and deposition 7/05/2011 from Dr. Hyman, with Stipulation and Award 100% Permanent Total Disability dated 11/28/2012 (Appx74-83), WCAB Opinion and Decision after Award 8/01/2014(Appx88-101), San Bernardino County Sheriff’s Department Disability Retirement Application (Appx48-63). Sheriff McMahon certified the facts in support of the PSOB Disability benefits, consistent with the law, (34U.S.C.§10285 (b)(2); 34U.S.C.§10285 (b)(3)).

The BJA rejected all four Certifications of Fact by Sheriff McMahon. The

BJA did not give substantial weight to the evidence, and the BJA did not adopt the factual findings, contrary to 34 U.S.C. §10285(b)(2) and 34 U.S.C§10285(b)(3).

The BJA reasoned the Sheriff certification had not satisfied the term "Certification of Facts", and then gave as an example, "…such as a crash report", (Appx012).

The BJA, (Appx012), then defined "Finding of Fact", (Black's Law Dictionary, 11th Ed. 2019), which is not a "Certification of Fact".

"Certification of Fact" has been defined as: "Evidence in the form of a certificate of an officer of the government with authority to issue the certificate is an old and well-established exception to the general prohibition against hearsay. The certificate of a governmental official is a particular case of the admissibility of a public document. The general reason for the exception is the probable trustworthiness of the public officer's statement and the great inconvenience that would be caused to public business if public officers had to be called to court to verify in person every fact they certify. See Wigmore on Evidence,§§ 1631-32 (Chadbourn rev.1974). Thousands of statutes permit certification of facts by public officials. Id.§ 1676. The certificate of a notary is, for example, a common instance. Id.§ 1675. No one supposes that the Confrontation Clause is violated if the notary does not appear. The certificate of an authorized official "is admissible only for those facts covered by the terms of the authority, and, conversely, that it is admissible to prove all the facts thus included." Id.§ 1674, ( footnote and emphasis omitted)". *U.S. v. Aikins*, 946 F.2d 608,614 (9th Cir. 1990).

Petitioner Lobo contends the Regulation, 28C.F.R.§ 32.5(b), giving discretion to the hearing officer to consider but not be bound by, or adopt, the findings of fact of a State, local, or Federal administrative or investigative agency regarding eligibility for death or disability benefits contradicts the mandate of the Acts, and should be reversed by this Court.

"When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. (citation omitted).If, however, the court determines congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, (citation omitted),as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on permissible construction of the statute (citation omitted)". *Chevron U.S.A., Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843; 104 S. Ct. 2778, (1984).

In the Acts, (34U.S.C.§10285 (b)(2); 34U.S.C.§10285 (b)(3)), Congress unambiguously expressed the intent to have substantial weight given to the evidence, and compels adoption of the findings of fact. Clearly the evidence as applied to the Acts supports the award of PSOB benefits. But the Regulation turned "shall" into "at his discretion", which has led to an arbitrary and capricious result.

"A regulation cannot stand if it is 'Arbitrary, capricious or manifestly contrary to the statute'", *United States v O'Hagan*, 521 U.S.642, 673(1997), (quoting *Chevron U.S.A. Inc v Natural Resources Defense Council, Inc.*, 467 U.S.837, 844 (1984)).

The regulation, 28 C.F.R.§32.5(b), should be invalidated and the clear intent of the Acts should be enforced. PSOB benefits should be awarded to Petitioner Lobo.

## D. SUBSTANTIAL MEDICAL EVIDENCE SUPPORTS THE AWARD OF PSOB BENEFITS

### 1. MARK HYMAN M.D., AGREED MEDICAL EXAMINER, OPINION IS SUBSTANTIAL EVIDENCE BECAUSE HE ANALYZED THE ENTIRE RECORD

Mark Hyman M.D., issued multiple reports regarding causation and disability of Claimant, and concluded the pneumonia, strokes , coma, cardiopulmonary arrests, DIC, amputation of both legs below the knees, amputation of the left arm at the elbow, amputation of all five fingers on the right hand, were work related resulting in 100% Permanent Total Disability. Based on Dr. Hyman's opinion, PSOB Benefits should be awarded.

Mark Hyman M.D. was selected as the Agreed Medical Examiner, a neutral doctor, by the Claimant/Petitioner and his employer, the County of San Bernardino Sheriff Department, in the California Workers Compensation claim.

Dr. Hyman, May 2, 2011, record review (Appx390), reviewed and summarized more than 9344 pages, 46.5 inches of medical records, Claimant's deposition, and other records identified in the report.

Dr. Hyman May 2, 2011, medical report (Appx371-381) personally physically examined and measured Claimant, took a history, noted the complaints, listed all information relied upon in forming his opinion, reported on causation of the injury and the disability, finding 100%Permanent Total Disability,

and outlined future care including home health assistance 12 hours per day, future medical care, transportation, due to pneumonia, industrially related. Dr. Hyman stated following the review of records and examination of Claimant, "This unfortunate series of circumstances is a direct result of his industrially related pneumonia", (Appx379).

Dr. Hyman, March 28, 2017, medical report (Appx295), further addressed the issue of causation in the line of duty, stating, "There is no question that the medical probability and preponderance of the evidence clearly argues that this gentleman's pneumonia was industrially related…But for his work as a public safety personnel in the jails, he would not have developed pneumonia when he did".

The opinion of Dr. Hyman is reasonable, credible, of solid value, and is based on the evidence The opinion of Dr. Hyman is the medical opinion which should be followed.

**2.THE "PRELIMINARY OPINION" OF WILLIAM OETGEN M.D. DOES NOT CONSTITUTE SUBSTANTIAL EVIDENCE**

The "Preliminary Opinion" from "MedTrans LLC, 647 First Street, Alexandria, VA 22314, president Phyllis M. Oetgen, JD, MSW", stamped William J. Oetgen M.D., (Appx141-142), should be stricken from the record.

On 10/14/2015, William J. Oetgen M.D., did not have a valid medical license issued by the Virginia Department of Health Professions, and was therefore ineligible to render a medical opinion .

Code of Virginia §54.1-2902, "It is unlawful for any person to practice medicine, osteopathic medicine, chiropractic, or podiatry or as a physician assistant in the Commonwealth without a valid license issued by the Board".

On 10/14/2015, the date of the report, Dr.Oetgen did not have a valid medical license issued by the Commonwealth of Virginia and could not practice medicine in Virginia. The resume from Dr. Oetgen (Appx149) lists his medical licenses, and the Commonwealth of Virginia is not on the list.

The "Preliminary Opinion", claims 186 pages of medical and administrative records were reviewed. The 1.5 page letter did not identify one page of information reviewed, identified, quoted, or paraphrased. There was no physical evaluation or testing of Claimant. The letter stated there was "…no medical certainty…", that law enforcement was a substantial factor in the development of pneumonia. The determination of medical certainty typically involves a thorough investigation and review of medical records and other relevant evidence to establish the causal connection between the injury and the officer's duties. MedTrans LLC did none of these things. Claimant was not physically examined, no history of injury was taken, no measurements were reported, no source of information was identified in the "Preliminary Opinion".

The PSOB cover letter and transmittal letter (Appx137-140) sent to the doctor did not identify one document for the doctor to review.

Again, the letter states it is a "Preliminary Report", three times in 1.5 pages. No "Final Opinion" is known to exist.

The PSOB/BJA relied on the "Preliminary Opinion" from MedTrans/Dr. Oetgen, an unlicensed physician, and denied the claim on a report which does not constitute substantial evidence. The denial of PSOB benefits to Petitioner should be reversed.

**2. THE OPINION OF JAMES H. DIAZ, M.D. IS INCONCLUSIVE**

James H. Diaz, M.D., 03/06/2021, (Appx617-634) was the second medical opinion obtained by the PSOB/BJA. Dr. Diaz did not evaluate Claimant. He took no history, did no measurements, and did not note any complaints. The medical records were not reviewed by Dr. Diaz. Instead he acknowledged that he relied on the record review by Mark Hyman M.D, AME, May 2, 2011 record review (Appx390).

Dr. Diaz did not find the disability of Claimant was not industrially related. He acknowledged, "Exposure to *Streptococcus pneumonia* as the sole causative agent of bacterial CAP contributed to Mr. Lobo's disabling pneumonia and complications to a greater degree than any other external force or factor (or combination of external forces or factors)", (Appx619).

Dr. Diaz concluded the Claimant's community acquired pneumonia (CAP), "…condition may not have been 100% industrially related as asserted by Dr. Hyman", (Appx623; Appx626).

Although Dr. Diaz did not find causation and disability 100% industrially related, he did not find causation to be non-industrial.

> "28C.F.R.§32.3. An "occupational disease" is "a disease (including an ailment or condition of the body) that routinely constitutes a special hazard in, or is commonly regarded as a concomitant of, an individual's occupation." Id. The implementing regulations further define "direct and proximate cause" as a "substantial factor." Id. A factor is a "substantial factor" if it is one that was "sufficient to have caused" the injury or "[n]o other factor (or combination of factors) contributed to the [injury] to so great a degree as it did", *Malin v. Department of Justice*, 2015-8001, (Fed. Cir. Aug 06, 2015).

Dr. Diaz (Appx621), erroneously reported, "Although Dr. Hyman noted that community exposure and transmission was <u>impossible</u> in this case…". Please note, Dr. Hyman never made such a statement in any of the reports or depositions in this case. This misunderstanding is foundational to the opinion of Dr. Diaz.

To the contrary, Dr. Hyman stated the pneumonia was acquired through direct contact with infected individuals, noted Claimant worked through and until the time of his severe illness, and he had contact with inmate populations which is well known to harbor multiple bacteria, concluding all of Claimant's complications would be industrially related, (Appx408;Appx325).

Dr. Diaz (Appx628) said he reviewed the report of Dr. Hyman, March 28,

2017, (Appx294), reports which stated, “There is no question that the medical probability and preponderance of the evidence clearly argues that this gentleman’s pneumonia was industrially related…But for his work as a public safety personnel in the jails, he would not have developed pneumonia when he did”.

Dr. Diaz reviewed at least seven (7) articles regarding the spread of pneumonia in jails and prisons, according to his report (Appx627-628). These articles support the opinion of Dr. Hyman. The articles include: “Infection Control in Jails and Prisons”; “Overcrowding Leads to Pneumonia”; “Overcrowding Forces Jails to Release Inmates”; “Prisons as Incubators and Spreaders of Disease and Illness”; “An Epidemic of Pneumococcal Disease in an Overcrowded, Inadequately Ventilated Jail”; “San Bernardino County to Lease Jail Space as a ‘Quick Fix’ for Problem of Overcrowding”. Several of these articles specifically pointed out problems which existed in the jails where Claimant worked. But Dr. Diaz only commented on an article regarding a Texas prison (Appx623). Then without considering the articles regarding the San Bernardino County jails in which claimant worked, Dr. Diaz discounted the claim stating, “…his CAP condition may not have been 100% industrially related as asserted by Dr. Hyman”, (Appx626). Dr. Hyman never made such a statement. On this erroneous foundation from Dr. Diaz, the PSOB and BJA denied the claim.

The BJA/PSOB specifically asked Dr. Diaz about the Cause of Injury. Dr.

Diaz stated, "Cannot respond…", (Appx618).

The opinion of Dr. Diaz is inconclusive, not substantial evidence, and should not be relied upon. PSOB benefits should be awarded Claimant.

**CONCLUSION AND RELIEF SOUGHT**

Claimant appeals the Director Determination dated 08/18/2023, served 8/23/2023, which denied payment of PSOB Benefits. The Appendix to Director Determination (Appx2-24) made findings that the Claimant sustained an injury within the meaning of the PSOB Act and implementing regulations (Appx10).

The certifications of fact by Sheriff McMahon (Appx44-45; Appx84; Appx 85; Appx86), the findings of fact and 100% permanent total disability award by the Judges at the California WCAB (Appx74-83; Appx88-101), the industrial total disability retirement by SBCERA Retirement Board (Appx73; Appx136), the medical reports of Dr. Hyman (Appx294-295;Appx371-381), as applied to the Acts of Congress, all support a finding to award PSOB Benefits.

The "Preliminary Opinion" report MedTrans/ Oetgen (Appx171-172) was incomplete and based on very limited unknown information provided by PSOB tothe unlicensed medical doctor. They were apparently replaced as the PSOB did not go back for a "Final Opinion".

The medical report of Dr. Diaz (Appx664-681) reported as to cause of injury, ("Cannot respond…"), and found the condition "may not be *100% industrially related*". He did not address if the condition was a "substantial factor", or comment if it was a "sufficient to have caused the injury".

Based on this record, it appears the clear intent of Congress which ordered the "Bureau shall give substantial weight to the evidence and all findings of fact presented by a State, local, or Federal administrative or investigative agency regarding eligibility for death or disability benefits", and "If the head of a State, local, or Federal administrative or investigative agency, in consultation with the principal legal officer of the agency, provides a certification of facts regarding eligibility for death or disability benefits, the *Bureau shall adopt the factual findings,*(emphasis added) if the factual findings are supported by substantial evidence," has been usurped by a regulation created by the same Bureau and disregarded. Instead, the "PSOB determining official may, at his discretion, consider (but shall not be bound by) the factual findings of a public agency (or public safety agency)".

Claimant requests the third branch of our government, this Court, act as a detached and neutral trier of fact and determine the Regulation cannot stand if it is "Arbitrary, capricious or manifestly contrary to the statute", that the Act is clear, that PSOB benefits should be awarded in this case.

Claimant respectfully requests the Court vacate the Director Decision and award the Claimant PSOB Disability Benefits which are currently $437,503.00, and PSOB Education benefits for Claimants children which are currently $1,488.00 per month to a maximum of 45 months, attorney fees, costs, and all other relief as to this Court seems just and proper.

Dated, March 29, 2024 Respectfully submitted,

LAW OFFICES OF BRIAN W.COLLINS, APC
Attorney for Petitioner, Albert Nelson Lobo

/s./ Brian Collins
By: Brian William Collins
7745 Boulder Ave., Unit 37
Highland, CA 92346
Ph: 909-649-6490
Fx: 909-864-2224
bcollins@bwcollinslaw.com

**Re: Alfred Nelson Lobo v**
**DOJ Case Number 24-1198**

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Federal Rule of Federal Circuit Rule 32(a). This brief contains 5,212 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Federal Circuit Rule 32(b). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman .

Dated: March 29, 2024

-

/s./Brian Collins
Brian W. Collins, attorney
for Albert Nelson Lobo, Petitioner

FORM 30. Certificate of Service

Form 30 July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 24-1198

**Short Case Caption** Albert Nelson Lobo v DOJ

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing Corrected Brief of Petitioner with Addendum, Albert Nelson Lobo by filing o n March 29 , 2 0 2 4 _ _ _ _ _ _ _ _ _ _ _ _ _ by U.S. Mail Hand Delivery X Email on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Anne M. Delmare, Esq. | U.S. Department of Justice-Civil Division<br>P.O. Box 480, Ben Franklin Station,<br>Washington, D.C. 20044<br>anne.m.delmare@usdoj.gov |

Date 03/29/2024

/s./Brian Collins
Brian William Collins

**<u>Re:Alfred Nelson Lobo v DOJ</u>**

**Case Number 24-1198**

**ADDENDUM AND EXHIBITS Page**

8/23/2023 Denial Cover Letter, Hope D. Janke, Director, PSOB Appx1

8/21/2023 Appendix to Director Determination, Robert Garrison, Appx2

8/18/2023 Director Determination, Karhlton F. Moore, Director, Appx26

U.S. Department of Justice

Office of Justice Programs

*Bureau of Justice Assistance*

*Washington, D.C. 20531*

August 23, 2023

Albert Lobo
c/o Attorney Brian Collins
bcollins@bwcollinslaw.com
al_lobo1@yahoo.com

RE: *PSOB Claim No. 2015-DIS-039*

Dear Mr. Collins:

Please provide the following information to your client, Mr. Albert Lobo:

This letter provides a final decision in response to your request that the Director of the Bureau of Justice Assistance (BJA) review your claim for disability benefits under the Public Safety Officers' Benefits (PSOB) Act, 34 U.S.C. § 10281 *et seq.*, and make a final agency determination. For the reasons articulated in the enclosed Determination, the claim for benefits has been denied.

Details regarding the process to appeal this determination are available in the enclosed determination. Please note that, should you wish to appeal, your appeal must be filed within 90 days of the date of this letter.

Enclosed is a copy of the final agency decision, as well as the Hearing Officer's Determination. For additional assistance, please do not hesitate to call the PSOB office toll free at 1-888-744-6513 or myself directly at 202-307-2858.

Sincerely,

Hope Janke
Director
Public Safety Officers' Benefits Office

Enclosures

cc: Mr. Albert Lobo

**APPENDIX**
to
**Director Determination**
Albert Nelson Lobo
PSOB Claim 2015-DIS-039

**Procedural History**

By fonn dated March 9, 2015,[4] Albert Lobo ("Claimant") filed a claim[5] with the Public Safety Officers' Benefits ("PSOB") Office, Bureau of Justice Assistance ("Bureau"), seeking disability benefits under 34 U.S.C. § 10281.[6] In a determination dated May 5, 2016, the PSOB Office denied the claim on the basis that the evidence did not show that the Claimant's medical condition was the direct and proximate result of an injury sustained in the line of duty.[7]

---

4 Report of Public Safety Officer's Permanent and Total Disability, submitted by John McMahon, Sheriff, San Bernardino County Sheriff's Office, dated March 9, 2015; *see also* Letter from Brian Collins, Attorney for Albert Lobo, to John McMahon, Sheriff-Coroner, San Bernardino County Sheriff-Coroner Department, and Gregory Devereaux, Chief Executive Officer, San Bernardino County, Request for Documentation, dated February 5, 2015 (notifying of legal representation and requesting "documentation filed by the County of San Bernardino to secure a [PSOB disability benefit]" for the Claimant); Letter from Brian Collins, Attorney for Albert Lobo, to Hope Janke, PSOB Director, Request for Extension/Waiver, dated March 19, 2015.

5 Claimant's filing was timely based on the fact that his claim for Workers Compensation benefits was not final until August J, 2014. *See* 28. C.F.R. 32.12(a)(2); Opinion and Decision After Reconsideration, Workers' Compensation Appeals Board, State of California, dated August 1, 2014.

6 When the Claimant filed for PSOB death benefits, the PSOB Act was codified at 42 U.S.C. §§ 3796 *et seq.* Since that time, however, and effective September I, 2017, the Office of Law Revision Counsel reorganized certain existing provisions of the United States Code in a new Title 34. Pursuant to this reorganization, the provisions of the PSOB Act are now located in Title 34, chapter 101, subchapter Xl, and, accordingly, the citations in this determination are to the new location of the PSOB Act in the Code.

The PSOB Act generally is applied as in effect on the date of the injury on which the claim is predicated (or, in connection with a claim under 34 U.S.C. § 10281(k), on the date of commencement of the heart attack. stroke, or vascular rupture that forms the predicate for the claim). *See generally* 28 C.F.R. § 32.4(d). Except as otherwise noted, references herein to the statute are in effect on the date of the Claimant's hospitalization for respiratory conditions (April 2010) that form the basis of this claim, including, as may be applicable, pursuant to Pub. L. No. 112-239, § 1086(d), 126 Stat. 1632, 1969 (Jan. 2, 2013), as amended, to Pub. L. No. 115-36, § 6(2), 131 Stat. 849, 852-853 (2017), to Pub. L. No. 117-61, § 8(b)(2), 131 Stat. 1474, 1479 (2021), and to Pub. L. No. 117-172, § 3(b)(l)(B), 136 Stat. 2098, 2100-2101 (2022)..

7 PSOB Office Determination, dated May 5, 2016.

The Claimant filed a timely request for a determination of his claim by a Hearing Officer.[8] The appeal was assigned to Hearing Officer Shinina Butler, who conducted a hearing in Redlands, California.[9] After a *de novo* review of the record, which included the Claimant's in-person testimony and additional evidence, the Hearing Officer determined that the Claimant had sustained a personal injury,[10] but she was not persuaded that such injury was sustained in the line of duty. The Hearing Officer ultimately concluded that "the Claimant ha[d] not established by a standard of more likely than not that he contracted pneumonia in the line of duty." [11]

The PSOB Office provided the Claimant with notice of that determination *via* letter dated December 6, 2017.[12] The Claimant filed a timely appeal to the Bureau Director.[13] The Claimant's initial filing on appeal consisted of a nine-page memorandum with assertions of error in the Hearing Officer's determination.[14] A subsequent filing dated January 23, 2018, requested the addition of 42 pages of documents to the record.[15]

In March 2021, Dr. James Diaz provided an independent medical opinion to the Bureau, under the legal standards of the PSOB Program. Dr. Diaz could not identify the source of the pathogen that caused Claimant's pneumonia, finding it equally likely that the Claimant was exposed at the jail or in other settings.[16] That opinion was provided to the Claimant's Counsel by letter dated March 17, 2021.[17] Nothing in the record indicates that any response was received within the 60-day period prescribed in the March 2021 letter, or at any time thereafter.

---

8 Email communication from Kristin Harger, Secretary to Law Offices of Brian Collins, Attorney for Albert Lobo, to Gary Vasquez, PSOB Paralegal Specialist, and Hope Janke, PSOB Director, dated June 29, 2016.

9 Hearing Transcript, dated April 4, 2017.

10 Hearing Officer Detennination, pp. 3-4, dated October 23, 2017.

II *Id.* at 8.

12 Letter from Hope Janke, PSOB Director, to Brian Collins, Attorney for Albert Lobo, Notification of Hearing Officer Determination, dated December 6, 2017.

13 Email communication between Kristen Harger, Brian Collins Law Finn, Gary Vasquez, PSOB Office, and Hope Janke, PSOB Director, Notice of Appeal, with attached Appeal of Disability Claim Denied, both dated January 2, 2018.

14 Appeal of Disability Claim Denied, dated January 2, 2018.

15 Letter from Brian Collins, Attorney for Albert Lobo, to Hope Janke, PSOB Director, Additions to Evidence Log, dated January 23, 2018.

16 *See* Independent Medical Review by James Diaz, M.D., p. 7, dated March 6, 2021 ("Either type of exposure could have resulted in nasopharyngeal coloni?.ation with S. *pneumonia* causing the chronic flu-like condition that Mr. Lobo described as lasting for 3-4 months.").

17 Letter from Hope Janke, PSOB Director, to Brian Collins, Attorney, dated March 17, 2021 (with attachment).

## Background

The Claimant began working for the San Bernardino County Sheriffs Office on January 18, 1997.[18] In November 2009, he was promoted to Deputy Sherriff[19] and assigned to the Adelanto Detention Center,[20] and subsequently to the Victor Valley Jail.[21]

In January 2010, the Claimant developed flu-like symptoms, including a cough and runny nose, treating himself with over-the-counter medications.[22] Records show that the Claimant sought outpatient treatment for an earache and sore throat in March 20IO that was treated with antibiotics.[23] On April 24, 2010, the Claimant presented to the emergency department at San Antonio Community Hospital suffering from a non-productive cough of five months duration and fever of two days duration.[24] On admission, the Claimant was diagnosed with conditions including diabetic ketoacidosis, community-acquired pneumonia, and acute kidney failure.[25] The Claimant was also found to have sepsis; as his condition worsened during the course of his hospitalization, he sustained interstitial lung disease, myocardial infarction, and amputations of portions of four limbs due to disseminated intravascular coagulation.[26]

In April 2013, the San Bernardino County Employees' Association granted the Claimant a service-connected disability retirement, effective January 12, 2013.[27] The Claimant and the County of San Bernardino "[entered] into Stipulations with Request for Award, and an Award

---

18 Interoffice Memo from Robert Fonzi, Undersheriff, Office of the Sheriff, San Bernardino County, to Norman Ruggles, Chief Executive Officer, San Bernardino County Employees' Retirement Association, p. 2, dated July 28, 2012 ("Interoffice Memo").

19 The terms Corporal, Corporal/Detective, Sheriff's Corporal/Detective, Sheriff's Detective/Corporal, and Deputy Sheriff/Corporal are used interchangeably throughout the claim documents to describe the Claimant's position/title. For consistency and to avoid confusion, the term Deputy Sheriff is used herein to describe his position.

20 *Id.*

21 Hearing Transcript, 21:16-19, dated April 4, 2017.

22 *See* Agreed Medical Examination, by Mark Hyman, M.D., dated May 2, 2011; Statement of Circumstances oflnjuries, signed by John McMahon, Sheriff-Coroner, San Bernardino County Sheriff-Coroner Department, dated June 2, 2015.

23 *See* Review of Medical Records, by Mark Hyman, M.D., p.3, dated May 2,201l.

24 *See* Review of Medical Records, by Marie Hyman, M.D., p. 3, dated May 2, 201l.

25 Review of Medical Records, by Marie Hyman, M.D., p. 5, dated May 2, 2011.

26 Deposition of Mark Hyman, M.D., Before the Workers' Compensation Appeals Board of the State of California, pp. 11-12; 17-21, dated July 5, 2011.

27 Letter from Dawn Peterson, Disability Benefits Officer, San Bernardino County Employees' Retirement Association, Member Service, to Laura Ornelas, Human Resources Officer, Sheriff-Coroner, dated April 5, 2013.

[of workers' compensation benefits] issued on November 28, 2012," which became final in August 2014.[28]

*Evidence/Expert Medical Opinions as to the Claimant's Condition*

Dr. Mark Hyman (2011-2012)

Dr. Mark Hyman, a board-certified internal medicine physician, performed an "Agreed Medical Examination" of the Claimant for workers' compensation purposes on May 2, 2011,[29] and an "Agreed Medical Examination Re-Evaluation" on November 14, 2012.[30] Dr. Hyman also reviewed over l0,000 pages of medical records summarizing these for purposes of the Claimant's workers' compensation claim,[31]and was deposed in July 2011 for workers' compensation proceedings.[32]

Following a physical examination, review of the record, and listing diagnoses including, diabetes, pnewnonia with complications including interstitial disease, myocardial infarction with history of atrial fibrillation, left below-the-knee amputation, right below-the-knee amputation, left transhumeral amputation, and right-hand digits amputation, Dr. Hyman opined that the Claimant "must now be considered 100% disabled. He has no reasonable future earnings capacity ... and has no reasonable ability to compete in an open labor market."[33]

Based on his review of the extensive record, Dr. Hyman opined that the Claimant developed pneumonia, whfoh progressed to a more severe form of pneumonia leading to sepsis, meaning the infection goes into the bloodstream.[34] As to the source of Claimant's pneumonia, Dr. Hyman wrote that-

> This is acquired through direct contact with infected individuals. This gentleman was working throughout and up until the time of his severe illness. He had

---

[28] Opinion and Decision After Reconsideration, Workers' Compensation Appeals Board, State of California, p. 3, dated August 1, 2014. The parties stipulated that the Claimant "sustained industrial injury [consisting of] 'diabetes; pneumonia with complications; renal failure, resolved: ischemic colitis, resolved; gastrointestinal bleed, resolved; left below-the-knee amputation; right below-the-knee amputation; left transhumeral amputation; right hand digits amputation; tracheostomy; heart-myocardial infarction with history of atrial fibrillation; [and] coronary artery disease."' *Id.*

[29] Agreed Medical Examination, by Mark Hyman, M.D., dated May 2, 2011.

[30] Agreed Medical Examination Re-Evaluation, by Mark Hyman, M.D., dated November 14, 2012.

[31] *See* Review of Medical Records, by Mark H. Hyman, M.D., dated May 2, 2011; Agreed Medical Examination Review of Medical Records II, dated November 14, 2012; Agreed Medical Examination Review of Records ID, Nov. 14, 2012.

[32] *See* Deposition of Mark Hyman, M.D., Before the Workers' Compensation Appeals Board of the State of California, pp. 4-16, dated July 5, 2011.

[33] Agreed Medical Examination, by Mark Hyman, M.D., dated May 2, 201I.

[34] Agreed Medical Examination, by Mark Hyman, M.D., pp. 7-8, dated May 2, 2011,

> contact with inmates and the inmate population is well known to harbor multiple bacteria. He is not aware of direct contact with anybody in the home environment who had similar difficulties or illnesses. Further, upper respiratory infections and pneumonia in a peace officer are presumed to be industrially related. Therefore, his pneumonia would be industrially related. Therefore, all of his complications would be industrially related.[35]

In a July 2011 deposition, Dr. Hyman was asked to clarify how he reached the conclusion that the Claimant had pneumonia and its cause.[36] Dr. Hyman testified that he did not identify the type of pneumonia,[37] but testified that, based on the records he reviewed, the cause of the pneumonia was the Claimant's "occupational duties."[38] He went on to testify that "the likelihood [of the Claimant acquiring pneumonia] is far greater from the work environment than the two urgent care visits."[39] In support of his conclusion, he noted that '[w]e have a lot of medical literature that identifies inmate and prison populations as having high degrees of infectious agents, and they can easily transmit those infectious agents."[40]

Dr. Hyman's final agreed medical examination, performed in November 2012, indicated that there were no significant changes in his opinion, but did note that new records from November 2010 "isolated a pneumococcus as the bacteria which caused [the Claimant's] severe difficulties."[41]

<u>Dr. William Oetgen (2015)</u>

In October 2015, Dr. William Oetgen, a physician board-certified in internal medicine, cardiology, as a medical examiner reviewed the medical and administrative records provided to him by the PSOB Office and, according to the PSOB Act and its implementing regulations, opined that there was "medical certainty" that the Claimant's pneumonia caused his medical complications and that the Claimant was permanently and totally disabled.[42] He noted that the Claimant "needs assistance in accomplishing all of the activities of daily living and his residual

---

35 Agreed Medical Examination, by Mark Hyman, M.D., P. 8, dated May 2, 2011.

36 Deposition of Mark Hyman, M.D., Before the Workers Compensation Appeals Board of the State of California, dated July 5, 2011.

37 Deposition of Mark Hyman, M.D., Before the Workers' Compensation Appeals Board of the State of California, pp. 4-16, dated July 5, 2011.

38 Deposition of Mark Hyman, M.D., Before the Workers' Compensation Appeals Board of the State of California, pp. 5-6, dated July 5, 2011.

39 Deposition of Mark Hyman, M.D., Before the Workers' Compensation Appeals Board of the State of California, p. 28, dated July 5, 2011.

40 Deposition of Mark Hyman, M.D., Before the Workers' Compensation Appeals Board of the State of California, p. 29, dated July 5, 2011.

41 Agreed Medical Examination Re-Evaluation, by Mark Hyman, M.D., pp. 3-4, dated November 14, 2012.

42 Independent Medical Evaluation, William Oetgen, M.D., p. 2, dated October 14, 2015.

functional capacity is insufficient to enable him to perform any type of employment."[43] As to the source of Claimant's pneumonia, Dr. Oetgen stated the following:

> [T]he file is devoid of evidence that Mr. Lobo's illness was work related or that he contracted pneumonia from an infected inmate. It is true that people who live and work in crowded places, such as schools, homeless shelters, and prisons, have a higher risk of contracting community acquired pneumonia. However, those with diabetes, such as Mr. Lobo, also are more susceptible to infections such as pneumonia. There is no medical certainty in this case that the performance of the claimant's law enforcement duties was a substantial factor in his development of pneumonia.[44]

Dr. Mark Hyman (2017)

In a March 2017 report obtained by the Claimant's attorney, Dr. Hyman took issue with Dr. Oetgen's opinion that "there is no medical certainty [that] claimant's law enforcement duties was a substantial factor in his development of pneumonia," stating that he was not tasked to provide an opinion with 100% medical certainty, but rather to state what is most medically probable.[45] He stated further that "[t]here is no question that the medical probability and preponderance of the evidence clearly argues that this gentleman's [the Claimant's] pneumonia was industrially related.... [and] [b]ut for his work as a public safety personnel in the jails, he would not have developed pneumonia when he did."[46]

Dr. James Diaz {2021)

In March 2021, Dr. James Diaz, a physician board-certified in specialties including occupational and environmental medicine, toxicology, preventive medicine, and public health, and medical examiner reviewed the record, including the new information provided by the Claimant, as to the causation and source of Claimant's pneumonia.[47]

Dr. Diaz noted that the Claimant was admitted to the hospital on April 24, 2010, "suffering from all of the complications of community-acquired pneumonia (CAP)." He noted further that the Claimant's CAP progressed in severity resulting in further complications including heart attacks and sepsis-induced disseminated intravascular coagulation which caused ischemic strokes in his brain and inadequate circulation to the legs, left arm, and right hand resulting in gangrene and subsequent amputations.[48]

---

43 Independent Medical Evaluation, William Oetgen, M.D., p. 2, dated October 14, 2015.

44 Independent Medical Evaluation, William Oetgen, M.D., p. 2, dated October 14, 2015.

45 Independent Medical Examination Review ofRecords, Mark Hyman, M.D., p. 2, dated March 28, 2017.

46 Independent Medical Examination Review of Records, Mark Hyman, M.D., p. 2, dated March 28, 2017.

47 Independent Medical Review by James Diaz, M.D., dated March 6, 2021.

48 *See* Independent Medical Review by James Diaz, M.D., p. 3, dated March 6, 2021.

As to causation, Dr. Diaz stated that the most common cause of severe CAP was *Streptococcus pneumoniae,* but noted that "[i]n about half of the cases of severe CAP with septicemia, *as in Mr. Lobo's case,* the causative pathogen is never identified[.]"[49] Dr. Diaz identified two possible means of infection, aspiration and inhalation, but did not identify a particular source of infection and did not agree with Dr. Hyman's opinion that the Claimant's CAP was caused by his work. He concluded as follows:

> Mr. Lobo could have been infected *S. pneumoniae* by either inhalation of infected respiratory droplets or by aspiration of nasopharyngeal colonizing S. *pneumoniae* bacteria. Aspiration of colonizing *S. pneumoniae* is responsible for about half of all pneumococcal CAP cases.
>
> Mr. Lobo described a remitting and relapsing chronic flu-like condition beginning in January 2010, and characterized primarily by a flu-like sinus condition with a runny nose and a cough. He sought care at an urgent care facility and took several courses of antibiotics over a 3½-4 month period. This chronic condition may have represented nasopharyngeal colonization with *S. pneumoniae* after exposures to asymptomatically infected carriers anywhere, including people in the community, his own children, or children and adolescents seeking urgent care for colds and upper respiratory infections during his periodic visits to the urgent care center.
>
> An inhalation exposure to infective respiratory droplets from inmates infected with *S. pneumoniae* has been described in prison outbreaks in large and overcrowded prisons with little personal space per inmate and inadequate ventilation. Since the 2 jail facilities where Mr. Lobo worked were not overcrowded with a maximum of90 inmates confined to two 45-bed dorms, there appeared to be less risk of exposure to infected respiratory droplets in those 2 facilities than in larger, overcrowded prisons with thousands of inmates. Therefore, Mr. Lobo was equally at likely risk of acquiring severe *S. pneumoniae* CAP by either aspiration or by inhalation, and his CAP condition may not have been I 00% *industrially related* as asserted by Dr. Hyman.[50]

Dr. Diaz could not identify the source of the pathogen *(Streptococcus pneumoniae)* that he concluded likely caused the Claimant's pneumonia finding it equally likely that the Claimant was exposed at the jail or in other settings.[51]

---

49 *See* Independent Medical Review by James Diaz, M.D., p. 3, dated March 6, 2021 (emphasis added).

50 Independent Medical Review by James Diaz, M.D., p. 10, dated March 6, 2021.

51 *See* Independent Medical Review by James Diaz, M.D., p. 7, dated March 6, 2021 ("Either type of exposure could have resulted in nasopharyngeal colonization with *S. pneumonia* causing the chronic flu-like condition that Mr. Lobo described as lasting for 3-4 months.").

## Discussion

Pursuant to 34 U.S.C. § l028l(b), "[i]n accordance with regulations issued pursuant to [the PSOB Act,[52]] in any case in which the Bureau determines that a public safety officer has become permanently and totally disabled as the direct and proximate result of a personal injury sustained in the line of duty," the Bureau is to pay the disability benefit[53] specified under that Act. The implementing regulations, at 28 C.F.R. § 32.S(a), provide that, "[e]xcept as otherwise may be expressly provided in the Act or [the implementing regulations], a claimant has the burden of persuasion as to all material issues of fact, and by the standard of proof of 'more likely than not.'" Under 28 C.F.R. § 32.23, a claimant must establish permanent- and total disability to "a degree of medical certainty,"[54] a term defined in the regulations.[55]

*Public Safety Officer Status*

The threshold inquiry in the determination of a PSOB disability claim is whether the Claimant was a "public safety officer," as defined by the PSOB Act and its implementing regulations, as of the time of the "catastrophic injury."[56] The PSOB Act defines a "public safety officer," in pertinent part, as "an individual serving a public agency in an official capacity, with or without compensation, as a law enforcement officer,"[57] and defines "law enforcement officer" as "an individual involved in crime and juvenile delinquency control or reduction or enforcement of the criminal laws."[58]

Generally speaking, within the meaning of the PSOB regulations, an individual is *involved* in crime control and reduction, or enforcement of the criminal laws if, as an officer of a public agency, he "has legal authority or -responsibility to arrest" persons alleged or found to have violated the criminal laws and the officer's agency recognizes that he has such authority and responsibility.[59]

---

52 The PSOB Act's implementing regulations are codified at 28 C.F.R. part 32, subpart F. Pursuant to 34 U.S.C. § 10287, references in this determination to the PSOB implementing regulations are references to those regulations as in effect on the date of this determination.

53 PSOB benefits are legal gratuities. 28 C.F.R. § 32.0; *Rose* v. *Arkansas State Police,* 479 U.S. l, 4 (1986) *(per curiam); Ortiz-Lebron* v. *United States,* 65 F. Supp.3d 305,307 (D. P.R. 2014); *cf also, e.g.,* H.R. Rep. No. 112-548 at 6, 11 (2012) (referring to legally gratuitous character of PSOB benefits).

54 *See* 28 C.F.R. § 32.23 (definitions of *Permanently disabled* and *Totally disabled).*

55 *See* 28 C.F.R. § 32.23 (defining *Medical certainty* as follows: "A fact exists to a degree of medical certainty, when, pursuant to a medical assessment, the fact is demonstrated by convincing evidence").

56 *See* 34 U.S.C. §§ l0281(b), 10284(1) ("'catastrophic injury' means an injury, the direct and proximate consequences of which permanently prevent an individual from performing any gainful work").

57 34 U.S.C. § l0284(9XA).

58 34 U.S.C. § 10284(6).

The record indicates that the Claimant was working as a Deputy Sheriff from January to April 2010, the approximate period of contraction of infection.[60] By virtue of his authority to perform law enforcement activities, including the arrest of subjects wanted for criminal offenses,[61] I find that he was a law enforcement officer, as defined in the PSOB Act and its implementing regulations.

*Line-of-Duty Injury*

<u>Injury</u>

For a disability claim to be payable under the PSOB Act, the evidence must establish that it is "more likely than not" that a public safety officer sustained a personal injury in the line of duty.[62] The Act itself does not define "injury," but the PSOB Act's implementing regulations, at 28 C.F.R. § 32.3, provide the following pertinent definition:

> a traumatic physical wound (or a traumatized physical condition of the body) directly and proximately caused by external force (such as bullets, explosives, sharp instruments, blunt objects, or physical blows), chemicals, electricity, climatic conditions, infectious disease, radiation, virus, or bacteria ... but [it] does not includ
>
> (I)Any occupational disease; or
>
> (2) Any condition of the body caused or occasioned by stress or strain.[[63]1

The evidence in the record here show that, on April 24, 2010, the Claimant was admitted to the hospital with pneumonia and sepsis, which ultimately led to severe complications including myocardial infarctions and amputations of four limbs.[64] In light of these facts, I find that the Claimant sustained an injury within the meaning of the PSOB Act and implementing regulations.

<u>In the Line of Duty</u>

To qualify for PSOB disability benefits, the Claimant must establish, among other things, that his "injury [was] *sustained in the line of duty.*"[65] As pertinent to this claim, an injury

---

60 Statement of Circumstances of Injuries, signed by John McMahon, Sheriff-Coroner, San Bernardino County Sheriff-Coroner Department, dated June 2, 2015.

61 *See* Position Description, Sheriff's Detective/Corporal including salary range and duties, dated August 16, 2010.

62 34 U.S.C. § 10281(b); 28 C.F.R. § 32.5(a).

63 28 C.F.R. § 32.3 (definition of *Injury).*

64 *See e.g.,* Independent Medical Review by James Diaz, M.D., p. 3, dated March 6, 2021.

is sustained in the line of duty only if "[i]t is sustained in the course of ... [p]erformance of line of duty activity or a line of duty action[.]"[66]

*Analysis*

The overwhelming weight of the evidence establishes that the Claimant is both permanently- and totally disabled as defined in the implementing regulations. The Claimant's residual functional capacity is severely limited by four amputations and the residual effects of heart and lung conditions resulting from pneumonia and sepsis, and there is no medical evidence in the record that these conditions will improve.[67] As such, the remaining issue is whether it is more likely than not the Claimant's pneumonia was the direct and proximate result of an exposure occurring in the line of duty.

*The Claimant's Argument*

The Claimant, through his attorney, maintains that the factual findings associated with his workers' compensation and disability retirement benefits, taken together with provisions in 34 U.S.C. § 10285(b}-directing that the Bureau "give substantial weight to the evidence and all findings of fact presented by a State, local, or Federal administrative or investigative agency regarding eligibility for death or disability benefits" and "adopt the factual findings [of such agency], if ... supported by substantial evidence"--compels an award of PSOB Program disability benefits.[68] The "factual findings" relied on by the Claimant consist of a "certification of facts" by Sheriff McMahon,[69] and supporting documents including an award of disability benefits by the California Workers Compensation Appeals Board, agreed medical evaluations by Dr. Mark Hyman prepared for the Claimant's workers' compensation claim, and disability retirement awarded by the San Bernardino County Employee's Retirement Association.[70]

The reliance on 34 U.S.C. § 10285(b)(2) & (3) and Dr. Hyman's opinions is misplaced. Section 10285(b)(2) requires the Bureau to give substantial weight only to "evidence and findings of fact presented by a State, local, or Federal administrative or investigative agency *regarding eligibility for death or disability benefits."* Section 10285(b)(3) requires the Bureau to adopt factual findings in instances where the head of a State, local. or Federal administrative or

66 28 C.F.R. § 32.3 (definition of *Line of duty injury).*

67 *See e.g.,* Independent Medical Evaluation, William Oetgen, M.D., p. 2, dated October 14,201S ("There is also medical certainty that Mr. Lobo is now totally and pennanently disabled. He needs assistance in accomplishing all of the activities of daily living and his residual functional capacity is insufficient to enable him to perfonn any type of employment.").

68 *See* Appeal of Disability Claim Denied, p. 3, dated January 2, 2018 ("34 U.S.C. 2018S(b) ... requires an award of the PSOB benefit to AJbert Nelson Lobo.").

69 Claimant's attorney identified the following as comprising the "certification of facts": (I) Report of Public Safety Officers Permanent and Total Disability, OJF Form 3650/7, 03/09/15; (2) Statement of Circumstances of Injuries 06/02/15; (3) Statement Regarding Official Toxicology Repo1ts or Analyses; and (4) Statement Regarding Investigative Reports, 06/02/15). *See* Appeal of Disability Claim Denied, p. 4, dated January 2.

70 *See* Appeal of Disability Claim Denied, p. 4, dated January 2, 2018.

investigative agency, in consultation with the principal legal officer of the agency, provides a certification of facts regarding eligibility for death or disability benefits if the factual findings are supported by substantial evidence. Sections 10285(b)(2) & (3) are specific to death- and disability-benefit determinations from agencies charged with either investigating the cause and nature of the injury, such as state highway patrol agency collision reports,[71] or adjudicating eligibility for death or disability benefits, such as the September 11th Victim Compensation Fund.[72] Accordingly, the "administrative or investigative agency" referenced in section 10285(b)(2) & (3) is a specific species of"public agency" defined in section 10284 and is not necessarily the same agency as the public safety officer's employing agency.

The Bureau is required to adopt factual findings pursuant to section 10285(b)(3) only if the following conditions are met: (1) there must be a "certification"[73] of facts that is made by bead of an agency charged with investigating the nature or cause of injury or determining eligibility for death or disability benefits; (2) the certification of facts must be made in consultation with the principal legal officer of the agency; (3) the certification of facts must regard eligibility for death or disability benefits; and; (4) the Bureau must determine that the factual findings contained in the agency's certification are supported by substantial evidence. Although certifications (if proper) from witness or public-safety-agency employers are "evidence" of a kind and presumptively admissible in support of PSOB claims, such certifications are not "evidence [or] findings of fact" within the meaning of 34 U.S.C. § 10285(b), because agency certifications areinterpretations of events (or conclusions about such events) and not a report of the evidence officially gathered or discovered, such as a crash report, pursuant to an investigation, nor are such certifications factual determinations made by a governmental agency, such as a workers' compensation agency, [74] in the course of discharging its official duty to determine eligibility for benefits and presented in support of that agency's determination.[75] Accordingly, 34 U.S.C. § l0285(b)(2) does not apply to the "factual findings" that are relied on here by the Claimant.

---

71 *See, e.g.,* PSOB Determ. re: *Payne* (No. 2010-275) (affording substantial weight to an investigate report of public safety officer's employing agency (Boston Fire Department, Board oflnquiry Report) regarding certain factual findings following investigation of fatal fire); PSOB Determ. re: *Collier* (No.2011-016) at 8 n. 24 (assigning substantial weight to the investigative factual findings of state highway patrol and State medical examiner "[t]o the extent that they were produced in contemplation of detennining Deputy Collier's eligibility for death benefits (other than, and without regard to, those under the PSOB Act),").

72 *See* 83 Fed. Reg. 22367, 22376-22377 (May 15, 2018) (giving effect to the substantial weight requirement in 34 U.S.C. § l0285(b)(2) by amendments to regulatory definitions in 28 C.F.R. § 32.3 to adopt findings of injury from the September 11th Victim Compensation Fund (which is an administrative agency "regarding eligibility for death or disability benefits").

73 28 C.F.R. § 32.3 (definition of *Certification,* setting out in detail the requirements *(not* satisfied here) for an assertion to constitute a "certification" within the meaning of the PSOB Act and its implementing regulations).

74 *See, e.g.,* San Bernardino County Employees' Retirement Association Minutes, Disability Retirement Document, p. 4467, dated April 4, 2013.

75 *See* FINDING OF FACT, Black's Law Dictionary (11th ed. 2019) ("A detennination by a judge, jury, or administrative agency of a fact supported by the evidence in the record, usu. presented at the trial or hearing[.]").

In an August 2014 decision, the California Workers' Compensation Appeals Board ("Board"), which is a state "administrative or investigative agency" within the meaning of 34 U.S.C. § 10285(b)(2), made several "findings of fact" relevant to this matter.[76] As required by law, the Bureau gives substantial weight to the Board's factual findings, including that the Claimant(}) sustained injury while employed as a Deputy Sheriff; (2) developed pneumonia in January 20IO; (3) was hospitalized on April 24, 2010; (4) went into septic shock, suffered multiple cardiac arrests, organ failure, and became comatose; and (5) subsequently developed intravascular coagulation resulting in amputations of portions of all four extremities.[77] Although the Claimant points to the "Stipulation with Request for Award"[78] as a qualifying "finding of fact," the Bureau does not agree with this characterization, as a stipulation, by definition, is not a finding of fact, but rather an agreement as to a relevant point by parties to a dispute.[79]

The San Bernardino County Employees' Retirement Association ("SBCERA") also is an "administrative or investigative agency" within the meaning of 34 U.S.C. § 10285(b)(2). SBCERA's determination of eligibility for disability retirement concludes that Claimant's "disability is Service-Connected based on multiple amputations caused by complications of pneumonia with sepsis and disseminated intravascular coagulation."[80] This April 2013 decision necessarily rests on the State's legal standard governing eligibility for these benefits found in the County Employee's Retirement Law of 1937 and related laws.[81] As SBCERA's causation determination is based on a different legal framework from that of the PSOB Act and implementing regulations--one where an officer's disability need only be a "result of injury or disease arising out of and in the course of the [officer's] employment" and need only

76 Opinion and Decision After Reconsideration, Workers' Compensation Appeals Board, State of California, signed by Ronnie G. Caplane, Marguerite Sweeney, and Deidra E. Lowe, p. 2, dated August I, 2014.

77 Opinion and Decision After Reconsideration, Workers' Compensation Appeals Board, State of California, signed by Ronnie G. Caplane, Marguerite Sweeney, and Deidra E. Lowe, p. 2, dated August l, 2014.

78 *See* Stipulations With Request for Award, State of California, Division of Workers' Compensation, Workers' Compensation Appeals Board, with Addendum, dated May 2, 2012, and May 25, 2012.

79 *See* STIPULATION, Black's Law Dictionary (11th ed. 2019) ("A voluntary agreement between opposing parties concerning some relevant point; esp., an agreement relating to a proceeding, made by attorneys representing adverse parties to the proceeding.").

80 *See* San Bernardino County Employees' Retirement Association Minutes, Disability Retirement Document, p. 4467, dated April 4, 2013 (emphasis added).

81 In *F/ethez* v. *San Bernardino County Retirement Association,* 2 Cal. 5th 630, 635 (Cal. 2017), the Supreme Court of California explained county retirement systems as follows:

> A county's retirement system is administered by a county retirement board, under the County Employees Retirement Law of 1937. (Gov. Code,§ 31450 et seq. (hereafter the CERL).)
>
> County retirement systems formed under the CERL provide both service retirements based on age and years of service (Gov. Code,§ 31670 et seq.) and disability retirements based on an employee becoming permanently incapacitated for the performance of his or her work duties. (Gov. Code,§ 31720 et seq.)

"contribute[] substantially to"[82] disability-it is not a "finding of fact" to which the Bureau is required to afford substantial weight.[83] Additionally, a determination as to causation is a legal or medico-legal conclusion rather than a "finding of fact."[84] By law, such a determination is necessarily entrusted, by statute, to the Bureau.[85]

Second, the requirement in 34 U.S.C. § 10285(b)(3) that the Bureau adopt the factual findings of a State, local, or Federal administrative or investigative agency is predicated on the Bureau's receipt of "a certification of facts" by the "head of a State, local, or Federal administrative or investigative agency, in consultation with the principal legal officer of the agency." Even if Sheriff McMahon's statements did constitute a "factual finding" of the type described in 34 U.S.C. § 10285(b)(2}--which they do not-those statements are not "certifi[ed]" within the meaning of the PSOB Act and defined in implementing regulations.[86] Consequently, 34 U.S.C. § 10285(b)(3) is inapplicable to such statements.

Finally, the Claimant's reliance on Dr. Hyman's opinions as to causation is misplaced as these are rendered in the context of California workers' compensation law, which presumes that pneumonia developing while an individual is serving as a member of a sheriff's department was

---

82 *See* Cal. Govt. Code. Ann. § 31720 (West, 2022) ("Any member permanently incapacitated for the performance of duty shall be retired for disability regardless of age if, and only if ... The member's incapacity is a result of injury or disease arising out of and in the course of the member's employment, and such employment contributes substantially to such incapacity[.]").

83 Additional evidence of the legal standard used by SBCERA in determining whether Claimant's disability was the result of line of duty activities is described in a July 2012 memorandum: "Once permanent incapacity is established, *the Board must go on to establish whether the incapacity is a result of disease or injury is arising out of or in the course of the member's employment, and such employment contributes substantially to the incapacity."* Letter from Dawn Peterson, Disability Benefits Officer, San Bernardino County Employees' Retirement Association, Member Service, to Laura Ornelas, Human Resources Officer, Sheriff-Coroner, dated July 3, 2012 (emphasis added).

84 *See, e.g., Demuliisv. United States,* 291 F.3d 1373, 1379-1380 (Fed. Cir. 2002) (a legal requirement that the Bureau, in PSOB determinations, give substantial weight to the evidence and findings of fact presented by administrative and investigative agencies does not apply "to their legal conclusions. Although the Bureau could give the [local agency]'s legal conclusion whatever weight, if any, it deemed appropriate, it was not required to give it any weight"); *Yanco* v. *United States,* 258 F.3d 1356, 1360-1363 (Ped. Cir. 2001) (upholding agency PSOB determination despite contrary State pension benefits rulings by State and local agencies).

85 *See* 34 U.S.C. § 10285(a)(l) ("In making determinations under section 10281 of this title, the Bureau may utilize such administrative and investigative assistance as may be available from State and local agencies. *Responsibility for making final determinations shall rest with the Bureau.")* (emphasis added); see also 34 U.S.C. § 10281(a). "In any case in which the *Bureau of Justice Assistance ... determines,* under regulations issued pursuant to this subchapter, that a public safety officer has died as the direct and proximate result of a personal injury sustained in the line of duty, a benefit ... shall be payable[.]"

86 Under the definition of"certification" at 28 C.F.R. § 32.3, any certification must, among other things, be "[l]egally subject to the provisions of 18 U.S.C. 1001 (false statements) and 1621 (perjury), and 28 U.S.C. 1746 (declarations under penalty of perjury), and expressly declare the same to be so[.]" 28 C.F.R. § 32.3 (definition of *Certification* 3). In addition, any certification must by executed by an individual with "knowledge of the fact (or facts) asserted[,] and expressly declare the same ... to be so[.]" *Id.* at 4.

caused by the officer's employment.[87] As explained below, because Dr. Hyman's opinions are based on the State law's presumption, these do not address or satisfy the PSOB Act. which requires that an officer's disability be "the direct and proximate result of a personal injury sustained in the line of duty."[88]

The record shows that Dr. Hyman examined the Claimant on two occasions, reviewed the Claimant's records and prepared reports in May 2011 and November 2012. Dr. Hyman's reports indicate that the Claimant contracted pneumonia in the course of his correctional work on the basis that the Claimant was "not aware of direct contact with anybody in the home environment who had similar difficulties or illnesses," and that the Claimant "was working throughout and up until the time of his severe illness... [and] had contact with inmates and the inmate population is well known to harbor multiple bacteria."[89] Addressing the issue of causation in a July 2011 deposition, Dr. Hyman testified that "the likelihood [of the Claimant acquiring pneumonia] is far greater from the work environment than two urgent care visits."[90] In support of his conclusion, he noted that "[w]e have a lot of medical literature that identifies inmate and prison populations as having high degrees of infectious agents, and they can easily transmit those infectious agents."[91]

Notably absent from Dr. Hyman's opinions and the record is any medical evidence that the Claimant himself contracted pneumonia in the course of his duties as a Deputy Sheriff. There is no evidence that any inmates in the jail where the Claimant worked had pneumonia between January and April of 2010, or any other relevant time period, and there is no evidence that the Claimant had contact with any infected inmates such that he could have been exposed to pneumonia in the course of his work.[92]

Dr. Hyman's theory of causation-that the lack of obvious illness in the Claimant's home coupled with studies showing that infections are present in certain jail settings indicates that he *must have* contracted pneumonia in his work at the jail-is offered without any factual basis. An assertion of generalized and increased risk of exposure to pneumonia or other similar diseases, as

---

87 *See* Cal. Lab. Code. Ann.§ 3212 (West, 2022), providing in pertinent part that "the term 'injury' includes pneumonia and heart trouble that develops or manifests itself during a period while the member is in the service of the office, staff, department, or unjt" and that "pneumonia so developing or manifesting itself in those cases shall be presumed to arise out of and in the course of the employment."

88 34 U.S.C. § 1028l(b).

89 Agreed Medical Examination, by Mark Hyman, M.D., P. 8, dated May 2, 2011.

90 Deposition of Mark Hyman, M.D., Before the Workers' Compensation Appeals Board of the State of California, p. 28, dated July 5, 2011.

91 Deposition of Mark Hyman, M.D., Before the Workers' Compensation Appeals Board of the State of California, p. 29, dated July 5, 2011.

92 *See Malin* v. *Dept. of Justice,* 623 Fed. Appx. 995,999 (Fed. Cir. 2015) (finding that substantial evidence supported Bureau determination that officer's condition was not direct and proximate result of his work where there was no evidence of officer's workplace exposure to toxins).

implied in Dr. Hyman's theory, is not evidence of "injury" for PSOB purposes.[93] Moreover, any opinion based on an assertion that the Claimant was generally exposed to pneumonia in the course of his duties is equivalent to asserting that pneumonia is an "occupational disease,"[94] which is expressly excluded from the definition of"injury" under the PSOB Act and implementing regulations.[95]

In the absence of evidence that anyone in the Claimant's work setting actually had pneumonia, and that the Claimant actually had some contact with infected individuals, Dr. Hyman's opinion appears to be largely based on speculation and the State law presumption,[96] neither of which is a valid legal basis for establishing causation under the PSOB Act. Undermining the persuasive value of Dr. Hyman's causation theory is the narrowly focused reliance on the Claimant's work environment as a source for infection, without any evidence of infection at the actual jail where the Claimant worked. Dr. Hyman's opinion is, in part, based on unspecified studies in the medical literature identifying prisons and jails as being a source of transmission of many infectious agents,[97] and the opinion dismisses the possibility of the Claimant's infection being caused by asymptomatic patients in the Claimant's visits to urgent care clinics, due to the apparent lack of significant medical literature showing increased risk of infection in these settings. Dr. Hyman's reliance on medical literature about disease in other correctional settings is not grounded in any specific consideration of whether the conditions that contributed to an increased risk of infection such as overcrowding actually existed in the particular jail where the Claimant worked.[98]

Moreover, neither medical examiner who reviewed the record according to the PSOB Act and implementing regulations concluded that the Claimant's pneumonia was, more likely than not, contracted in the course of his line of duty activities as a Deputy Sheriff. Although agreeing with Dr. Hyman that the Claimant was totally disabled, Dr. Oetgen noted that "the file is devoid of evidence that [the Claimant's] illness was work related or that he contracted pneumonia from

---

93 *See Tafoya* v. *United States,* 8 CL. Ct. 256, 262-263 (1985) ("account of events" offered by PSOB claimant's expert was "based primarily on speculation, which is inadequate evidence of what occurred"); *Brister* v. *United States,* No. 0t-180C, slip op. at 5-6 (Fed. Cl., Mar. 27, 2002) (rejecting the use of"speculation" as evidence, and stating that "(F]ederal law requires more than reasonable probability. The standard here is whether [the public safety officer's] death was the direct and proximate result of a traumatic injury, sustained in the line of duty. This higher standard requires more concrete evidence of specific injury.").

94 *See* 28 C.F.R ,32.3 (definition of *Occupational disease); Malin,* 623 Fed. Appx. at 999 (<([Claimant's] disability retirement award was similarly based on various unspecified exposures ... which amount to an occupational disease." (citations omitted)).

95 *See* 28 C.F.R. § 32.3 (definition of *Injwy).*

96 *See* Agreed Medical Examination, by Mark Hyman, M.D., P. 8, dated May 2,201 I ("He is not aware of direct contact with anybody in the home environment who had similar difficulties or illnesses. Further, upper respiratory infections and pneumonia in a peace officer are presumed to be industrially related. Therefore, his pneumonia would be industriaJly related. Therefore, all of his complications would be industrially related").

97 R.148

98 Claimant testified that full capacity at Victor Valley Jail is 90 i.nmates, and that they "always were running between 78 to 85." R. 251

an infected inmate" and concluded that "[t]here is no medical certainty in this case that the performance of the claimant's law enforcement duties was a substantial factor in his development of pneumonia."[99]

Dr. Diaz could not identify a particular source of Claimant's pneumonia, but opined that exposure to *Streptococcus pneumoniae* was a likely contributing factor.[100] He, too, did not agree with Dr. Hyman's opinion that the Claimant's pneumonia was caused by his work, stating that the Claimant's chronic flu-like condition in 2010 "may have represented nasopharyngeal colonization with *S. pneumoniae* after exposures to asymptomatically infected carriers anywhere, including people in the community, his own children, or children and adolescents seeking urgent care for colds and upper respiratory infections during his periodic visits to the urgent care center."[101] He also stated that the Claimant's pneumonia "may not have been 100% *industrially related* as asserted by Dr. Hyman" on the basis that the jails where the Claimant worked (with a maximum capacity of 90 inmates in (2) 45-bed dormitories) did not have the same degree of overcrowding as studies pertaining to pneumonia outbreaks in prison settings.[102]

Given the lack of evidence in the record as to any pneumonia-infected inmate in the jail where the Claimant worked and any opportunity for transmission of infection to the Claimant, Dr. Oetgen's statement that "the file is devoid of evidence that [the Claimant's] illness was work related or that he contracted pneumonia from an infected inmate,"[103] and Dr. Diaz's inability to identify a particular source of the Claimant's pneumonia, I am not persuaded that it is more likely than not that the Claimant contracted his disabling pneumonia in the course of performing line of duty activities as a Deputy Sheriff.

---

99 Independent Medical Evaluation, William Oetgen, M.D., p. 2, dated October 14, 2015.

Dr. Diaz answered, "Cannot respond to Ia" in response to the following question:

Please identify the external force or factor, e.g., bacteria, shown by the record to have been encountered by Mr. Lobo in the course of his work as a deputy sheriff at the detention center, that, by itself, was sufficient to bring about Mr. Lobo's disabling pneumonia and complications.

*See* Independent Medical Review by James Diaz, M.D., p. 2, dated March 6, 2021. Dr. Diaz stated further that, "[i]n about half of the cases of severe CAP with septicemia, *as in Mr. Lobo's case,* the causative pathogen is never identified by Gram stain on microscopy or isolated by culture of sputum (respiratory secretions) or blood." (emphasis added}. *Id.* at 3.

101 *See* Independent Medical Review by James Diaz, M.D., p. 10, dated March 6, 2021.

102 *See* Independent Medical Review by James Diaz, M.D., p. I0, dated March 6, 2021.

103 The Claimant rejects Dr. Oetgen's opinion as "a mere conclusion at best" on the basis that Dr. Oetgen did not examine the Claimant, did not take a history of the Claimant, and did not review the Claimant's medical records. *See* Appeal of Disability Claim Denied, p. 6, dated January 2, 20I8. It is unclear what a review of the Claimant's medical or an examination of the Claimant would reveal about the source of the Claimant's infection. Dr. Oetgen reviewed the record provided by the Claimant as it existed at the time, some 186 pages, and, as a physician with more than three decades of experience and board-certified in internal medicine, cardiology, as well as a long-time medical examiner with the PSOB Program, Dr. Oetgen is sufficiently qualified to review the record to determine if there is evidence as to whether the Claimant's pneumonia was caused by something he encountered in the line of duty.

**EVIDENCE LOG for**
**Albert N. Lobo (2015-DIS-039)**

The above determination is based upon the Bureau of Justice Assistance Director's *de novo* review of the record before the agency, which includes the following:

A. **Evidence, correspondence, and other information associated with the record that was before the Public Safety Officers' Benefits (PSOB) Office:**

001 Report of Public Safety Officer's Permanent and Total Disability, submitted by John McMahon, Sheriff, San Bernardino County Sheriff's Office, dated March 6, 2015;

003 Letter from Brian Collins, Attorney for Albert Lobo, to John McMahon, Sheriff-Coroner San Bernardino County Sheriff-Coroner Department, and Gregory Devereaux, Chief Executive Officer, San Bernardino County, Request for Documentation, dated February 5, 2015;

005 San Bernardino Sheriffs Department Disability Retirement Application, dated August 7, 2012;

- 006 Interoffice Memo from Robert Fonzi, Undersheriff, Office of the Sheriff, San Bernardino County, to Norman Ruggles, Chief Executive Officer, San Bernardino County Employees' Retirement Association, dated July 28, 2012;
- 010 Essential Functions of Sheriffs Corporal/Detective, undated;
- 012 San Bernardino County Position Characteristics Inventory, undated;
- 015 Sheriff's Detective/Corporal including salary range and duties, dated August 16, 201O;
- 017 Physical Requirements Questionnaire, dated July 28, 2012;

021 Letter from Brian Collins, Attorney for Albert Lobo, to Hope Janke, PSOJ3 Director, Request for Extension/Waiver, dated March 19, 2015;

23 Employer's Report of Occupational Injury or Tllness, dated April 25, 2010;

24 Employee's Claim for Workers' Compensation Benefits, dated April 25, 2010;

025 Amended Employee's Claim for Workers' Compensation Benefits, dated August 18, 2010;

26 Notice of Permanent Work Restrictions, dated May 2, 2011;

27 Letter from Kevin 0. Lawrence, M.D., To Whom It May Concern, dated April 5, 20\3;

28 Letter from Dawn Peterson, Disability Benefits Officer, San Bernardino County Employees' Retirement Association, Member Service, to Laura Ornelas, Human Resources Officer, Sheriff-Coroner, dated July 3, 2012, and April 5, 2013;

031 Stipulations With Request for Award, State of California, Division ofWorkers' Compensation, Workers' Compensation Appeals Board, with Addendum, dated May 2, 2012, and May 25, 2012;

- 040 Addendum to Stipulations with Request for Award, Healthnet $637,389.69, undated;

41 Statement of Circumstances of Injuries, signed by John McMahon, Sheriff-Coroner, San Bernardino County Sheriff-Coroner Department, dated June 2, 2015;
42 Award Made in Favor of Albert Lobo, State of California, Division of Workers' Compensation, signed by Catherine Coutts, Administrative Law Judge, dated November 28, 2012;
43 Statement Regarding Investigative Reports, signed by John McMahon, Sheriff-Coroner, San Bernardino County Sheriff-Coroner Department, dated June 2, 2015;
44 Statement Regarding Official Toxicology Reports Or Analyses, signed by John McMahon, Sheriff-Coroner, San Bernardino County Sheriff-Coroner Department, undated;
45 2009-2014, U.S. Federal Tax and California Tax Information for Albert Lobo;
104 Report of Public Safety Officer's Permanent and Total Disability, submitted by John McMahon, Sheriff-Coroner, San Bernardino County Sheriff's Office, undated, with the following:
- 105 Opinion and Decision After Reconsideration, Workers' Compensation Appeals Board, State of California, signed by Ronnie Caplane, Marguerite Sweeney, and Deidra Lowe, dated August 1, 2014;
- 120 Deposition of Mark Hyman, M.D., Before the Workers' Compensation Appeals Board of the State of California, dated July 5, 2011;
- 154 Affidavit, Christie Porter, Chief of Member Services, San Bernardino County Employees' Retirement Association, dated September 10, 2015;
- 155 Re-Submittal of Statement Regarding Official Toxicology Reports Or Analyses, signed by John McMahon, Sheriff-Coroner, San Bernardino County Sheriff-Coroner Department, undated, (listed at 044);

156 Letter from Felicia Wintz, Senior Benefits Specialist, PSOB Office, to William Oetgen, **M.D.,** dated September 29, 2015, with the following:
- 157 Questions for Medical Review of PSOB Disability Claims, updated date of October 201O;

160 Independent Medical Evaluation, William Oetgen, M.D., dated October 14, 2015;
162 Curriculum Vitae, Dr. William Oetgen;
182 PSOB Office Determination, dated May 5, 2016;
186 Notification of PSOB Office Determination, from Hope Janke, PSOB Director, to Brian Collins, Attorney for Albert Lobo, dated June 1, 2016;
187 Notification of PSOB Office Determination, from Hope Janke, PSOB Director, to John McMahon, Sheriff-Coroner, San Bernardino County Sheriff-Coroner Department, dated June 1, 2016;

B. **Evidence, correspondence, and other information associated with the record that was**

**before the Hearing Officer, including that in paragraph A above:**

**188** Email communication from Kristin Harger, Secretary to Law Offices of Brian Collins, Attorney for Albert Lobo, to Gary Vasquez, PSOB Officer, and Hope Janke, PSOB Director, dated June 29, 2016, with the following:

- 189 Petition for Hearing and Petition for Reconsideration of Denial of Benefits, dated June 29, 2016;
- 196 Joseph A. Bick, *Ir!fection Control in Jails and Prisons,* Healthcare Epidemiology, Clinical Infectious Diseases, (October 15, 2007);
- 205 *Overcrowding Leads to Pneumonia,* Prison Legal News, (November 15, 1994), https://www.prisonlegalnews.org/news/l 994/nov/15/overcrowding-leads-to-pneumonia;
- 206 Gina Tenorio, *Overcrowding Forces Jails to Release Inmates,* Patch, (December 12, 2011), http://patch.com/california/redlands/overcrowding-forces-jails-to-release-inmates;
- 209 John E. Dannenberg, *Prisons as Incubators and Spreaders of Disease and Illness,* Prison Legal News, (August 15, 2007); https://www/prisonlegalnews.org/news/2007/aug/15/prisons-as-incubators-and-spreaders-of-disease-and-i Ilness;
- 224 MD Profile Page, Arizona Medical Board, William John Oetgen, M.D., http://www.azmd.gov, dated June 29, 2016;
- 226 Virginia Board of Medicine Practitioner Information, http://www.vahealthprovider.com/search_results.asp, dated June 29, 2016;
- 227 Maryland Board of Physicians Practitioner Profile System, William J. Oetgen, https://www.mbp.state.rnd.us/bpqapp/PProfile.asp, dated June 29, 2016;
- 229 DC.gov Department of Health, Licensee Details, William J. Oetgen, dated June 29, 2016;
- 230 Proof of Service of Mail, Petition For Reconsideration of Denial of Benefits, dated June 29, 2016;

231 Acknowledgment of Request for Hearing Officer Appeal from Hope Janke, PSOB Director, to Brian CoUins, Attorney for Albert Lobo, dated September 22, 2016;

232 Letter from Brian Collins, Attorney for Albert Lobo, to Shinina Butler, Hearing Officer, April 4, 2017, dated March 28, 2017;

233 Hearing Officer Transcript, dated April 4, 2017;

- 310 Exhibit 1, Mark Hyman M.D., Supplemental Report, dated March 28, 2017;
  - 311 Proof of Service by Mail, State of California-County of Los Angeles, dated March 31, 2017;
  - 312 Health Insurance Claim Form, County of San Bernardino, dated March 29, 2017;
  - 313 Independent Medical Examination Review of Records, Mark Hyman,M.D., dated March 28, 2017;

315 Exhibit 2, Mark Hyman M.D., Supplemental Report, dated November 15, 2012;
316 Agreed Medical Examination Supplemental Report, dated November 15, 2012;
318 Proof of Service by Mail, dated November 20, 2012;
320 Exhibit 3, Mark Hyman M.D., Supplemental Report, dated November 14,2012;
321 Agreed Medical Examination Re-Evaluation and Review of Records, dated November 14, 2012;
353 Exhibit 4 Deposition Transcript of Mark Hyman, M.D., dated July 5, 2011;
389 Exhibit 5, Agreed Medical Examination, dated May 2,2011;
401 Pulmonary Function Testing, Reviewed by Mark Hyman, M.D., dated May 2, 2011;
404 Echocardiogram Report, Reviewed by Mark Hyman, M.D., dated May 3, 2011;
405 Carotid Duplex Report, Reviewed by Mark Hyman, M.D., dated May 3, 2011;
406 Laboratory Report, Saint John's Health Center, dated May 3, 2011;
407 Medical Document, Reviewed by Mark Hyman, M.D., dated May 4, 2011;
408 Patient Demographics, Reviewed by Mark Hyman, M.D., dated May 6, 2011;
409 Review of Medical Records, dated May 2, 2011;
526 Minutes of Hearing and Summary of Evidence, State of California, Workers' Compensation Appeals Board, signed by Catherine Coutts, Workers' Compensation Judge, dated August 13, 2013, through March 21, 2016;
583 Amended First Page of Report of Public Safety Officers Permanent Disability, undated;
585 Opinion and Decision After Reconsideration, Workers' Compensation Appeals Board, State of California, signed by Ronnie G. Caplane, Marguerite Sweeney, and Deidra E. Lowe, dated August l, 2014;
601 San Bernardino County Employees' Retired Association Minutes, Disability Retirement Document, dated April 4, 2013;
612 Re-Submittal of San Bernardino's Sheriffs Department Disability Retirement Application, dated August 7, 2012, (listed at 005);
614 Re-Submittal of Interoffice Memo from Robert Fonzi, Undersheriff, Office of the Sheriff, San Bernardino County, to Norman Ruggles, Chief Executive Officer, San Bernardino County Employees' Retirement Association, dated July 28, 2012, (listed at 006);
618 Re-Submittal of Essential Functions, Sheriff's Corporal/Detective, undated, Oisted at O1O);
620 Re-Submittal of San Bernardino County Position Characteristics Inventory, undated, (012);
623 Re-Submittal of Sheriff's Detective/Corporal, including salary range and duties, dated August 16, 2010, (listed at O15);

625 Re-Submittal of Physical Requirements Questionnaire, dated July 28, 2012, (listed at 017);

629 Hearing Officer Determination, dated October 23, 2017;

638 Letter from Hope Janke, PSOB Director, to Brian Collins, Attorney for Albert Lobo, Notification of Hearing Officer Determination, dated December 6, 2017;

639 Letter from Hope Janke, PSOB Director, to Brian Collins, Attorney for Albert Lobo, Representative Fee, dated December 6, 2017;

**C. Evidence, correspondence, and information associated with the record that was before the BJA Director, including that in paragraphs A and B above:**

640 Email communication between Kristen Harger, Brian Collins Law Firm, Gary Vasquez, PSOB Office, and Hope Janke, PSOB Director, Notice of Appeal, dated January 2, 2018;

641 Appeal of Disability Claim Denied, dated January 2, 2018;

649 Proof of Service of Mail, dated January 2, 2018;

650 Acknowledgment of Request for BJA Appeal from Hope Janke, PSOB Director, to Brian Collins, Attorney for Albert Lobo, dated January 12, 2018;

651 Additions to Evidence Log, dated January 23, 2018, with the following:

653 Re-Submittal of Stipulations With Request for Award, State of California, Division of Workers' Compensation, Workers' Compensation Appeals Board, with Addendum, dated May 2, 2012, and May 25, 2012, (listed at 031-039);

663 Re-Submittal of Addendum to Stipulations with Request for Award, Healthnet $637,389.69, undated, (listed at 040);

664 Re-Submittal of Award Made in Favor of Albert Lobo, State of California, Division of Workers' Compensation, signed by Catherine Coutts, Administrative Law Judge, dated November 28, 2012; (listed at 042);

666 San Bernardino County Employee Retirement Association Memorandum, dated July 3, 2012;

667 Re-Submittal of Letters from Dawn Peterson, Disability Benefits Officer, San Bernardino County Employees' Retirement Association, Member Service, to Laura Ornelas, Human Resources Officer, Sheriff-Coroner, dated July 3, 2012, and April 5, 2013; (listed at 028);

671 Re-Submittal of Report of Public Safety Officer's Permanent and Total Disability, submitted by John McMahon, Sheriff, San Bernardino County Sheriff's Office, dated March 6, 2015, (listed at 001);

674 Re-Submittal of Statement Regarding Official Toxicology Reports or Analyses, signed by John McMahon, Sheriff-Coroner, San Bernardino County Sheriff-Coroner Department, undated, (listed at 044);

676 Re-Submittal of Statement Regarding Investigative Reports, signed by John McMahon, Sheriff-Coroner, San Bernardino County Sheriff-Coroner Department, dated June 2, 2015, (listed at 043);

678 Re-Submittal of Statement of Circumstances of Injuries, signed by John McMahon, Sheriff-Coroner, San Bernardino County Sheriff-Coroner Department, dated June 2, 2015, (listed at 042);
680 Re-Submittal of Employer's Report of Occupational Injury or Illness, dated April 25, 2010, (listed at 023);
682 C.W. Hoge, M.D., et al., *An Epidemic of Pneumococcal Disease in an Overcrowded, Inadequately Ventilated Jail,* N Engl J Med, Vol. 331, No. 10, 643-648, downloaded from nejm.org on March 2, 2017;
689 Hugo Martin, *San Bernardino County to Lease Jail Space as a 'Quick Fix' for Problem of Overcrowding,* Los Angeles Times, January 12, 2005;
691 Re-Submjttal oflndependent Medical Examination Review of Records, Mark Hyman, M.D., March 28, 2017, (listed at 313);
694 Email communication between Kristen Harger, Brian Collins Law Firm, Gary Vasquez, PSOB Office, and Hope Janke, PSOB Director, Letter of Representation, dated March 15, 2019, with the following:
695 Letter of Representation, Law Offices of Brian Collins, dated March 15, 2019;
697 Verification, signed by Brian Collins, Attorney for Albert Lobo, dated March 15, 2019;
698 Proof of Service by Mail, signed by Kristin Harger, Brian Collins Law Firm, dated March 15, 2019;
699 Email from Brian Collins, Attorney, to Gary Vasquez, PSOB Office, dated November I, 2019;
700 Letter from Hope Janke, PSOB Director, to Brian Collins, Attorney, dated March 17, 2021, with the following:
701 Letter from Hope Janke, PSOB Director, to James Diaz, M.D., Request for Medical Opinion with Index, undated;
707 Independent Medical Review by James Diaz, M.D., dated March 6, 2021;

**D. Miscellaneous Medical Documents**

725 Re-Submittal of Pulmonary Function Testing, Reviewed by Mark Hyman, M.D., dated May 2, 2011, (listed at 401);
728 Re-Submittal of Echocardiogram Report, Reviewed by Mark Hyman, M.D., dated May 3, 2011, (listed at 404);
729 Re-submittal of Carotid Duplex Report, Reviewed by Mark Hyman, M.D., dated May 3, 2011, (listed at 405);
730 Re-Submittal of Laboratory Report, Reviewed by Mark Hyman, M.D., dated May 6, 2011, (listed at 406);
732 Re-Submittal of Review of Patient Demographics, Mark Hyman, M.D., dated May 2, 2011, (listed at 408);
733 Re-Submittal of Review of Medical Records and Agreed Medical Examinations, Mark Hyman, M.D., dated May 2, 2011, through November 15, 2012, (listed at pages 409,389,320,327, and 346);
896 Re-Submittal of Agreed Medical Examination Supplemental Report, Mark Hyman, M.D., dated November 15, 2012, (listed at 816);

899 Letter from Scott Goldman, M.D., to Brian Collins, Attorney for Albert Lobo, dated March 31, 2014;

901 Request for Authorization, State of California, Division of Workers' Compensation, signed by Scott Goldman, M.D., dated October 17, 2014;

902 Examination of the Bilateral Lower Extremities, Scott Goldman, **M.D.**, dated January 7, 2015, and

905 Letters from Scott Goldman, M.D., to Jeannie Story, County of San Bernardino Risk Management, dated from January 15, 2014, through May 18, 2015.

. Department r J

Office of Justice Program

Bur au n Jr, tin: Assistan

Washington, D.C. 20531

**CERTIFICATION OF PSOB COUNSEL**

FROM: Robert S. Garrison, Jr.
PSOB Counsel

RE: Albert Nelson Lobo, PSOB Claim No. 2015-DIS-039

I have reviewed the above-captioned file and the associated determination. In my view the determination is consistent with the terms of the PSOB Act and its implementing regulations. Accordingly, I conclude the determination to be legally sufficient and concur in the determination that the benefits claimed **are not** legally payable.

**ROBERT GARRISON** Digitally signed by ROBERT GARRISON Date: 2023.08.21 14:45:16 -04'00'

Robert S. Garrison, Jr.

. . Oepartm nt of Ju Uc

f ICC of J ti e p grn_m,

B11rem1 if.Ju ·tice ,A ·ista11·e

Washington, D.C. 20531

**Director Determination**
Albert Nelson Lobo
PSOB Claim 2015-DIS-039

Albert Nelson Lobo ("Claimant") was a Deputy Sheriff and member of the San Bernardino County Sheriff's Department. The Claimant indicated that on April 25,2010, he sustained an injury in the line of duty that resulted in a total and permanent disability. He subsequently filed a claim with the Public Safety Officers' Benefits ("PSOB") Office, Bureau of Justice Assistance ("Bureau"), seeking disability benefits.

Pursuant to the PSOB Act and its implementing regulations, and as the Director of the Bureau of Justice Assistance, I have conducted a review of the record in this claim as described in the evidence log in the attached Appendix.

The record shows that the Claimant honorably served as a member of the San Bernardino County Sheriff's Office from 1997 to 20I0. In January 20I0, the Claimant began working at the Victor Valley Jail. Shortly thereafter, he began experiencing "flu-like" symptoms, including a cough and runny nose. After seeking care on at least two occasions, on April 24, 2010, the Claimant was admitted to the emergency room and diagnosed with community-acquired pneumonia; *i.e.,* pneumonia acquired outside oftbe hospital. The sepsis that accompanied his pneumonia led to severe complications, including cardiopulmonary arrests and the amputation of parts of all four extremities.

To be eligible for PSOB disability benefits, the evidence in the record must show that a claimant is permanently and totally disabled as the direct and proximate result of a physical injury sustained in the line of duty. Here, although the record shows that the Claimant sustained severe and disabling complications from pneumonia, it does not establish that the pneumonia was the direct and proximate result of an external force or factor *(e.g.,* bacteria) encountered in the course of his official duties.

Based on the evidence of record, T am unable to conclude that the Claimant sustained an "injury" within the meaning of the PSOB Act and its implementing regulations that rendered him permanently and totally disabled.

Accordingly,for the reasons set forth above and discussed in detail in the attached Appendix, this claim for PSOB Act benefits is **denied.**

Karhlton F. Moore
Digitally signed by I<arhlton F. Moore
Date: 2023.08.18 14:49:35 -()4'00'

Karhlton F. Moore
Director
Bureau of Justice Assistance

**Appeal Rights**

Relief from this determination may be sought via appeal to the United States Court of Appeals for the Federal Circuit, pursuant to 34 U.S.C. § 10287. Such appeal must be filed "not later than 90 days after the date of which the Bureau [of Justice Assistance] serves notice" of this determination on the claimant. *Id.* Notice of this determination is served by the PSOB Office on the date that it is "(1) [m]ailed, by U.S. mail, addressed to the individual (or to his representative) at his (or his representative's) last address known to [the PSOB Office]; ... (2) [d]elivered to a courier or other delivery service, addressed to the individual (or to his representative) at his (or his representative's) last address known to such Office[,]"[1] or (3) having been so prescribed, sent "by the PSOB Office [to] an individual by electronic means (such as by telefacsimile or electronic mail addressed to the individual (or to his representative) at his (or his representative's) last address known to [the PSOB Office])[.]"[2]

**Fees for Representation**

lf a representative (such as an attorney) has provided any services in connection with this claim, the representative must obtain authorization pursuant to 28 C.F.R. § 32.7 before seeking any compensation whatsoever for such services from the claimant.[3]

28 C.F.R. § 32.2(c).

2 28 C.F.R. § 32.2(gX2).

3 *See* 34 U.S.C. § 1028S(a).